UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF WEST VIRGINIA
AT CHARLESTON

JULIA E. BLACKWOOD,

       Plaintiff,

v.                         Civil Action No. 2:18-cv-1216

BERRY DUNN, LLC,
NICOLE Y. BECNEL, and
JANE DOE(S),

       Defendants.

<u>MEMORANDUM OPINION AND ORDER</u>

Pending is plaintiff's motion to remand this matter to the Circuit Court of Kanawha County, West Virginia, filed September 11, 2018.[1]

I.    Background

Plaintiff Julia E. Blackwood, a citizen of West Virginia, worked for defendant Berry Dunn, LLC ("Berry Dunn"), a Maine corporation with its principal place of business in Maine, as a contract employee.  Compl. ECF No. 1-1, at ¶ 16.  On February 25, 2016, Ms. Blackwood was offered and accepted "full-

---

[1] Also pending is defendants' motion to dismiss, filed August 15, 2018.  "Where, as here, a motion to remand and a Rule 12(b)(6) motion to dismiss are both made, it is ordinarily improper to resolve the Rule 12(b)(6) motion before deciding the motion to remand."  <u>Adkins v. Consolidation Coal Co.</u>, 856 F. Supp. 2d 817, 819 (S.D.W. Va. 2012).

time employment with Berry Dunn as a Senior Consultant . . .
with her employment to start on April 5, 2016." Id. ¶ 20.
Defendant Nicole Becnel, a resident of West Virginia, was the
manager of Berry Dunn's Charleston office and was responsible
for assigning projects to senior consultants such as Ms.
Blackwood. Id ¶ 9. Ms. Becnel, however, assigned the more
lucrative positions only to a particular group of her "close
personal friends and confidants within the office," excluding
Ms. Blackwood. Id. ¶ 12.

Ms. Blackwood, at some point not specified in the
complaint, began to question the propriety of certain billing
practices of Berry Dunn. Id. ¶¶ 22-28. Around the time she
began this questioning, Ms. Blackwood noticed discussions of
particularly lavish spending by Ms. Becnel on events she
"privately hosted for the State employee assigned with oversight
responsibility on the Berry Dunn State consulting contracts."
Id. ¶ 29. Ms. Blackwood believes that her questioning of Berry
Dunn's state billing practices led Ms. Becnel to initiate "an
internal campaign of discrimination, intentional harassment,
invasion of privacy and defamation of Ms. Blackwood." Id. ¶ 30.

At the direction of Ms. Becnel, other employees
secretly photographed Ms. Blackwood with her eyes closed while

she was on her lunch break in the office, though Ms. Blackwood never consented to having her picture taken. Id. ¶ 35-38.

On March 16, 2017, Ms. Becnel informed Ms. Blackwood that she had been fired because she had fallen asleep on the job on three separate occasions. Id. ¶ 31. Ms. Becnel is further alleged to have discussed Ms. Blackwood's confidential employment information with other employees. Id. ¶ 32.

After her employment was terminated, Berry Dunn's director of human resources, Debra Genender, informed Ms. Blackwood by electronic mail that she would be paid three weeks' severance, amounting to $4,038.46. Id. ¶¶ 42-44. Ms. Blackwood alleges that she relied on this promised payment to her detriment, though she does not identify the detriment. Id. at 9. When Berry Dunn learned of her retaining counsel in connection with her employment termination, Berry Dunn refused to pay the severance unless she released all potential claims against them and subjected herself to restrictions in seeking future employment. Id. ¶¶ 45-47.

Ms. Blackwood became aware of the photographs taken by employees of Berry Dunn at the direction of Ms. Becnel on May 2, 2017 when she received the pictures from defendants' counsel. Id. ¶ 53.

Ms. Blackwood initiated this action in the Circuit Court of Kanawha County on March 16, 2018. She asserts claims against Berry Dunn for violations of the West Virginia Wage Payment and Collection Act and against all defendants for wrongful termination of employment by discriminating against her on the basis of her age, unlawful invasion of privacy, breach of promise, detrimental reliance, breach of contract and breach of the related covenant of good faith and fair dealing, intentional infliction of emotional distress, negligent infliction of emotional distress, and aiding and abetting. Id. at 9.

On August 8, 2018, the defendants removed the case to federal court, asserting fraudulent joinder of Ms. Becnel and invoking this court's diversity jurisdiction. See 28 U.S.C. § 1332(a)(1). Plaintiff subsequently moved to remand on the ground that the defendants failed to establish fraudulent joinder.

## II.  Standard of Review

The fraudulent joinder standard is well settled. Our court of appeals lays a "heavy burden" upon a defendant removing a case on such grounds:

> In order to establish that a nondiverse defendant has been fraudulently joined, the removing party must establish either: [t]hat there is no possibility that

the plaintiff would be able to establish a cause of
        action against the in-state defendant in state court;
        or [t]hat there has been outright fraud in the
        plaintiff's pleading of jurisdictional facts."

<u>Mayes v. Rapoport</u>, 198 F.3d 457, 464 (4th Cir. 1999) (emphasis

in original) (quoting <u>Marshall v. Manville Sales Corp.</u>, 6 F.3d

229, 232 (4th Cir. 1993)).  The applicable standard "is even

more favorable to the plaintiff than the standard for ruling on

a motion to dismiss[.]"  <u>Hartley v. CSX Transp., Inc.</u>, 187 F.3d

422, 424 (4th Cir. 1999).


        As the decision in <u>Hartley</u> illustrates, fraudulent

joinder claims are subject to a rather black-and-white analysis

in this circuit.  Any shades of gray are resolved in favor of

remand.  At bottom, a plaintiff need only demonstrate a "glimmer

of hope" in order to have his claims remanded:

    CSX contests these points and we are unable to resolve
    them with the snap of a finger at this stage of the
    litigation. Indeed, these are questions of fact that
    are ordinarily left to the state court jury.

    <u>In all events, a jurisdictional inquiry is not the
    appropriate stage of litigation to resolve . . .
    various uncertain questions of law and fact</u>. Allowing
    joinder of the public defendants is proper . . .
    because courts should minimize threshold litigation
    over jurisdiction. Jurisdictional rules direct
    judicial traffic. They function to steer litigation to
    the proper forum with a minimum of preliminary fuss.
    The best way to advance this objective is to accept
    the parties [as] joined . . . unless joinder is
    clearly improper.  To permit extensive litigation of
    the merits of a case while determining jurisdiction
    thwarts the purpose of jurisdictional rules.

. . . . .

> We cannot predict with certainty how a state
> court and state jury would resolve the legal issues
> and weigh the factual evidence in this case. Hartley's
> claims may not succeed ultimately, but ultimate
> success is not required . . . . Rather, there need be
> only a slight possibility of a right to relief. Once
> the court identifies this glimmer of hope for the
> plaintiff, the jurisdictional inquiry ends.

Id. at 425-26 (emphasis added).

Inasmuch as defendants do not allege any outright fraud in the pleading of jurisdictional facts, the only question for fraudulent joinder purposes is whether plaintiff has any possibility of recovery against the nondiverse defendant, Nicole Becnel.

Further, although the plaintiff appears to have moved to amend her complaint to include more detailed factual assertions and to raise new causes of action, see ECF No. 16, this subsequent development has no effect on the court's analysis inasmuch as the court must look at the plaintiff's pleadings at the time of removal. See Legg v. Wyeth, 428 F.3d 1317, 1322 (11th Cir. 2005) ("[t]he determination of whether a resident defendant has been fraudulently joined must be based upon the plaintiff's pleadings at the time of removal"); see also 14 Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 3723 (3d ed 1998) (determination of fraudulent joinder should be made based on the record at the time of

removal).

## III. Discussion

The plaintiff contends in her motion for remand that she has a possibility of obtaining relief from Berry Dunn, Ms. Becnel, and the Jane Doe defendants "on the basis of her factual allegations supporting the following causes of action:" (1) wrongful termination pursuant to West Virginia Code § 21-3-20 and (2) invasion of privacy in one of the four areas recognized by West Virginia law. Pl.'s Mot. Remand ("Pl.'s Mot."), ECF No. 6, at 3-4. The plaintiff advances no other ground for remand.

### A. Wrongful Termination

Plaintiff asserts, for the first time in her motion, that West Virginia Code § 21-3-20 "sets forth substantial public policy prohibiting the use of electronic devices to monitor the activities of [Berry Dunn's] employees on its premises." Pl.'s Mot., ECF No. 6, at 6. Further, she claims that the approval or direction by Berry Dunn and Ms. Becnel, encouraging other employees to take pictures of Ms. Blackwood violated that statute and makes her termination wrongful. Id.

West Virginia Code § 21-3-20 states:

It is unlawful for any employer or the agent or
representative of an employer, whether public or
private, to operate any electronic surveillance device
or system, including, but not limited to, the use of a
closed circuit television system, a video-recording
device, or any combination of those or other
electronic devices for the purpose of recording or
monitoring the activities of the employees in areas
designed for the health or personal comfort of the
employees or for safeguarding of their possessions,
such as rest rooms, shower rooms, locker rooms,
dressing rooms and employee lounges.

Id.

In her complaint, however, Ms. Blackwood contends that
the accusation that she was sleeping on the job was a pretext
for her dismissal based upon age discrimination. See Compl.,
ECF No. 1-1, at ¶ 3. Plaintiff specifically states that her
dismissal was "in violation of well settled public policy in
West Virginia which prohibits termination from employment on the
basis of the employee's age."[2] Id. Nowhere in the complaint
does the plaintiff indicate that her wrongful termination is
based on a substantial public policy against recording or
monitoring employees in the workplace (or even mention W. Va.
Code § 21-3-20). She may not raise this argument for the first
time in her motion to remand the case. See S. Walk at Broadlands

---

[2] The defendants state in their notice of removal why a claim
against Ms. Becnel for wrongful termination due to age
discrimination is not actionable, and the plaintiff does not
contest that reasoning. See Notice of Removal, ECF No. 1, at 4-
5.

Homeowner's Ass'n v. OpenBand at Broadlands, LLC, 713 F.3d 175, 184 (4th Cir. 2013) ("It is well established that parties cannot amend their complaints through briefing.")

B. Invasion of Privacy

The plaintiff further asserts that the factual allegations would support "one or more" of the four areas recognized by West Virginia law as an invasion of privacy. Id. at 4. Those four areas are: "(1) an unreasonable intrusion upon the seclusion of another; (2) an appropriation of another's name or likeness; (3) unreasonable publicity given to another's private life; and (4) publicity that unreasonably places another in a false light before the public." Syl. Pt.8, Crump v. Beckley Newspapers, Inc., 173 W. Va. 699, 320 S.E.2d 70 (1983).

The first area is the unreasonable intrusion upon the seclusion of another. "Courts in West Virginia have generally adopted the Restatement (Second) of Torts § 652B for claims of intrusion upon seclusion." Snuffer v. Great Lakes Educ. Loan Servs., Inc., 97 F. Supp. 3d 827, 835 (S.D.W. Va. 2015). The Restatement provides: "One who intentionally intrudes, physically or otherwise, upon the solitude or seclusion of another or his private affairs or concerns, is subject to liability to the other for invasion of his privacy, if the

intrusion would be highly offensive to a reasonable person."
Restatement (Second) of Torts § 652B (1977). "The protection
afforded by the law of privacy is restricted to persons of
reasonable sensibilities, and does not extend to the
supersensitive." Syl. Pt. 10, Crump, 173 W. Va. at 703, 320
S.E.2d at 74.

Ms. Blackwood contends that Ms. Becnel directed other
employees of Berry Dunn to surreptitiously photograph the
plaintiff while she was asleep at work. Compl., ECF No. 1-1, ¶¶
34-35. When they were unable to photograph her while she was
sleeping, plaintiff contends they took a picture of her, on her
lunch break while she was resting her eyes. Id. ¶¶ 36-37. In
her motion, plaintiff also informs the court that she was with a
group of people when she was photographed. See Pl.s' Mot. ECF
No. 6, at 7. Without being in an area protected from monitoring
by W. Va. Code § 21-3-20, it cannot be said that taking a
photograph of an individual while they are at work, either alone
on a lunch break or surrounded by others, would constitute an
unreasonable intrusion into the solitude or seclusion of
another. The facts alleged in the complaint would not support
an intrusion upon seclusion invasion of privacy claim.[3]

---

[3] The court notes that both parties discuss, in the notice of
removal and motion for remand, respectively, how the plaintiff

The second invasion of privacy area is appropriation of another's name of likeness. "In order for a communication to constitute an appropriation, mere publication of a person's name or likeness is not enough, the defendant must take for his own use or benefit the reputation, prestige or commercial standing, public interest or other value associated with the name or likeness published." Syl. Pt. 11, Crump, 173 W. Va. at 703, 320 S.E.2d at 74. The plaintiff asserts that the picture's use by Berry Dunn as evidence to terminate her benefited the defendants, but this argument is unpersuasive and was raised for the first time in her motion. See Pl.'s Mot., ECF No. 6, at 4 n.13. There are no allegations in the complaint that would support a claim for appropriation of Ms. Blackwood's likeness, as Ms. Becnel did not take for her own benefit any value associated with the shared image of Ms. Blackwood.

The third area is unreasonable publicity given to another's private life. "'Publicity,' in the context of invasion of privacy, entails that disclosure be widespread and not limited to a single person or a small group of people." Mays v. Marshall Univ. Bd. of Governors, 2015 WL 6181508, at *6

---

had previously taken photographs in the Berry Dunn offices; however, it does not rely on the assertions of either party regarding the taking of those photographs and Berry Dunn's reaction thereto in rendering its decision here.

(W. Va. Oct. 20, 2015) (citing <u>Crump</u>, 173 W. Va. at 716, 320

S.E.2d at 87-88)).  The Restatement similarly notes

> Invasion of the right of privacy ... depends upon
> publicity given to the private life of the
> individual.... 'Publicity' ... means that the matter
> is made public, by communicating it to the public at
> large.... Thus, it is not an invasion of the right of
> privacy ... to communicate a fact concerning the
> plaintiff's private life to a single person or even to
> a smaller group of persons.

<u>Id.</u> (quoting Restatement (Second) of Torts § 652D cmt. a

(1977)); <u>see</u> <u>Benson v. AJR, Inc.</u>, 215 W. Va. 324, 328-29, 599

S.E.2d 747, 751-52 (2004) (finding that an employer's

communication of an employee's private information to three

individuals, all of whom were the employees, officers, or

creditors of the employer, did not amount to widespread

publicity).

Here, the plaintiff has alleged "on information and

belief, Ms. Becnel discussed Ms. Blackwood's confidential

information with certain members" of Ms. Becnel's group of good

friends and confidants at work.  Compl., ECF No. 1-1, at ¶ 32.

Assuming that Ms. Becnel did share confidential work

information, and assuming that it was unreasonable to do so, she

is only alleged to have told a limited number of people.  The

facts pled in the complaint cannot therefore meet the

requirements for pleading a publication of private fact claim

against Ms. Becnel.

The final area of invasion of privacy is publicity that places another in false light before the public. For a plaintiff to have an actionable false light claim, the matter publicized must be untrue, the publication must be offensive to a reasonable person, and the matter must be widely publicized. See Crump, 173 W. Va. at 715-16, 320 S.E.2d at 87-88 (citations omitted). The same requirements for widespread publication apply to false light claims as apply to publication of private fact claims. Id.

The plaintiff asserts that by sharing the photographs of Ms. Blackwood, in which it appears that she is asleep, the defendants have portrayed her in a false light. Pl.'s Mot., ECF no. 6, at 17. Assuming that Ms. Blackwood was not asleep and that dissemination of such a photograph would be offensive to a reasonable person, the complaint alleges no facts to suggest that the publication was widespread, nor does the complaint even allege that it was Ms. Becnel that publicized the photographs.[4] The complaint notes that Ms. Blackwood became aware of the photographs when they were sent to her counsel by Berry Dunn's

_____

[4] In her motion for remand the plaintiff does state that "Becnel published the photos to Blackwood's coworkers and Berry Dunn falsely claiming the pictures show Blackwood was asleep." ECF No. 6, at 7. However, "[i]t is well established that parties cannot amend their complaints through briefing." S. Walk at Broadlands Homeowner's Ass'n v. OpenBand at Broadlands, LLC, 713 F.3d 175, 184 (4th Cir. 2013).

counsel.  Compl., ECF No. 1-1, at ¶ 53.  The photographs must have been sent out to the public at large by Ms. Becnel, not just to a few Berry Dunn employees and attorneys, in order for there to be a possible false light cause of action against her.

Inasmuch as the plaintiff does not object to any other portions of defendants' notice of removal which assert that the remaining causes of action pled in the complaint could not be established against Ms. Becnel, the court does not address them here.[5]

## IV.  Conclusion

In light of the foregoing, the court finds that the defendants have demonstrated that Ms. Becnel was fraudulently joined.  The court accordingly ORDERS that the plaintiff's motion to remand be, and it hereby is, denied.

Further, inasmuch as plaintiff's first amended complaint, filed November 26, 2018, was not consented to by the

_____

[5] The court notes that in both the complaint and in plaintiff's motion for remand, the plaintiff makes very brief allegations of defamation against Ms. Becnel.  Compl., ECF No. 1-1, at ¶ 30; Pl.'s Mot., ECF No. 6, at 7.  All claims of defamation must fail here inasmuch as the plaintiffs have not asserted what the actual defamatory statements were. Syl. Pt. 1, Crump, 173 W. Va. at 703, 320 S.E.2d at 74 (An "essential element[] for a successful defamation action [includes] (1) defamatory statements . . . .").

defendants nor approved by the court, Fed. R. Civ. P. 15(a)(2), and seeks to amend the causes of action to strengthen her claims against Ms. Becnel, it is ORDERED that the plaintiff's first amended complaint be stricken from the docket without prejudice. This case shall proceed under the allegations contained in the original complaint.

Accordingly, it is also ORDERED that defendants' motion to strike the first amended complaint, filed December 10, 2018, plaintiff's motion to strike defendants' reply in support of their motion to strike the first amended complaint, filed January 3, 2019, and plaintiff's motion for leave to file a corrected motion to strike the defendants' reply or alternatively, leave to file a necessary sur-reply, also filed January 3, 2019, be, and hereby are, denied as moot.

The Clerk is directed to transmit copies of this memorandum opinion and order to all counsel of record and any unrepresented parties.

ENTER: March 13, 2019

John T. Copenhaver, Jr.
Senior United States District Judge