UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF WEST VIRGINIA
AT CHARLESTON

JULIA E. BLACKWOOD,

             Plaintiff,

v.                                    Civil Action No. 2:18-cv-1216

BERRY DUNN, LLC,
NICOLE Y. BECNEL, and
JANE DOE(S),

             Defendants.

<u>MEMORANDUM OPINION AND ORDER</u>

             Pending is the joint motion to dismiss plaintiff's

complaint, filed by defendants Berry Dunn, LLC ("Berry Dunn")

and Nicole Becnel (collectively, "the defendants") on August 15,

2018.  Also pending is plaintiff's "Motion for Leave to File

Motion to Remand Instanter" (which is simply a request to file a

late response), filed September 24, 2018, which motion is

granted as set forth below.


                    I.   Background


             Plaintiff Julia E. Blackwood, a citizen of West

Virginia, worked for Berry Dunn, a Maine corporation with its

principal place of business in Maine, as a contract employee.

Compl. ECF No. 1-1, at ¶ 16.  On February 25, 2016, Ms.

Blackwood was offered and accepted "full-time employment with

Berry Dunn as a Senior Consultant . . . with her employment to start on April 5, 2016." Id. ¶ 20.  Ms. Becnel, a resident of West Virginia, was the manager of Berry Dunn's Charleston office and was responsible for assigning projects to senior consultants such as Ms. Blackwood.  Id ¶ 9.  Ms. Becnel, however, assigned the more lucrative positions only to a particular group of her "close personal friends and confidants within the office," excluding Ms. Blackwood.  Id. ¶ 12.

Ms. Blackwood, at some point not specified in the complaint, began to question the propriety of certain billing practices of Berry Dunn.  Id. ¶¶ 22-28.  Around the time she began this questioning, Ms. Blackwood noticed discussions of particularly lavish spending by Ms. Becnel on events she "privately hosted for the State employee assigned with oversight responsibility on the Berry Dunn State consulting contracts." Id. ¶ 29.  Ms. Blackwood believes that her questioning of Berry Dunn's state billing practices led Ms. Becnel to initiate "an internal campaign of discrimination, intentional harassment, invasion of privacy and defamation of Ms. Blackwood."  Id. ¶ 30.

At the direction of Ms. Becnel, other employees secretly photographed Ms. Blackwood with her eyes closed while she was on her lunch break in the office, though Ms. Blackwood never consented to having her picture taken.  Id. ¶ 35-38.  Ms.

Blackwood became aware of the photographs taken by employees of Berry Dunn at the direction of Ms. Becnel on May 2, 2017 when she received the pictures from defendants' counsel. Id. ¶ 53.

On March 16, 2017, Ms. Becnel informed Ms. Blackwood that she had been fired because she had fallen asleep on the job on three separate occasions. Id. ¶ 31. Ms. Becnel is further alleged to have discussed Ms. Blackwood's confidential employment information with other employees. Id. ¶ 32.

On March 17, 2017, a day after Ms. Blackwood was informed that her employment was being terminated, Berry Dunn's director of human resources, Debra Genender, informed Ms. Blackwood by electronic mail that she would be paid, in addition to the payment for her eight hours of work the previous day and for her fifty-five hours of accrued vacation time, three weeks' severance, amounting to $4,038.46. Id. ¶¶ 42-44. Ms. Blackwood alleges she was "unconditionally promised she was 'being given'" this severance pay; and, as a consequence, that she made purchases and committed to making other payments "in the approximate amount of the severance payments." Id. ¶¶ 44-45. When Berry Dunn learned that Ms. Blackwood had retained counsel in connection with her employment termination, they refused to pay the three weeks' severance unless she released all potential claims against them and subjected herself to restrictions in

3

seeking future employment.  Id. ¶¶ 45-47.  The conditions placed on Ms. Blackwood's receiving the severance pay are alleged to have caused her "substantial emotional distress accompanied by physical injury," and Berry Dunn is purported to have attempted to leverage those injuries to "force Ms. Blackwood to release her lawful claims against" the defendants.  Id. ¶¶ 48-52.

On May 5, 2017, Berry Dunn's counsel sent Ms. Blackwood a second electronic letter in which they stated that if she chose to pursue her claims, the pictures of her sleeping at work would undoubtedly become a part of the public record and might hinder her ability to obtain future employment.  Id. ¶ 54. Berry Dunn further stated that in the interest of keeping those photographs from becoming public, it would be in "Ms. Blackwood's interest to execute the separation agreement that she has been offered, so both parties can move forward."  Id.

Ms. Blackwood initiated this action in the Circuit Court of Kanawha County on March 16, 2018.  She asserts claims against Berry Dunn for violations of the West Virginia Wage Payment and Collection Act ("WPCA"), West Virginia Code § 21-5-1 et seq., "for late payment of amounts paid and failure to pay all amounts due Ms. Blackwood," and against all defendants for wrongful termination of employment by discriminating against her on the basis of her age, unlawful

4

invasion of privacy, breach of promise, detrimental reliance, breach of contract and breach of the related covenant of good faith and fair dealing, intentional infliction of emotional distress ("IIED"), negligent infliction of emotional distress, and aiding and abetting. Id. at 9.

The defendants moved to dismiss the claims against them on August 15, 2018. The plaintiff did not respond to this motion within the fourteen days provided by Local Rule of Civil Procedure 7.1(a)(7). Instead, on September 24, 2018, the plaintiff filed the motion entitled "Motion for Leave to File Motion to Remand Instanter," attached to which is a response in opposition to defendants' motion to dismiss. The court deems the plaintiff's motion to be a request for leave to file a late response. The defendants opposed plaintiff's motion by noting that plaintiff's counsel admitted that his late filing was due to lack of familiarity with the local rules.[1] Inasmuch as plaintiff's counsel also assigns his illness as a reason for the late filing and because there has not been any prejudice alleged by the defendants, the court, in the interest of justice, grants

---

[1] Attached to defendants' response in opposition to plaintiff's motion is their reply in support of their motion to dismiss. ECF No. 10-1.

the plaintiff's motion to file a late response.  It is so

ORDERED.

On August 8, 2018, the defendants removed the case to
federal court, asserting fraudulent joinder of Ms. Becnel and
invoking this court's diversity jurisdiction, see 28 U.S.C. §
1332(a)(1), and on September 11, 2018, the plaintiff moved to
remand the case to the Circuit Court of Kanawha County.  The
court denied plaintiff's motion to remand on March 13, 2019.

## II.  Standard of Review

Federal Rule of Civil Procedure 8(a)(2) requires that
a pleader provide "a short and plain statement of the claim
showing . . . entitle[ment] to relief."  Fed. R. Civ. P.
8(a)(2); Erickson v. Pardus, 127 S. Ct. 2197, 2200 (2007).  Rule
12(b)(6) correspondingly permits a defendant to challenge a
complaint when it "fail[s] to state a claim upon which relief
can be granted . . . ."  Fed. R. Civ. P. 12(b)(6).

The required "short and plain statement" must provide
"'fair notice of what the . . . claim is and the grounds upon
which it rests.'"  Bell Atlantic Corp. v. Twombly, 550 U.S. 544,
545 (2007) (quoting Conley v. Gibson, 355 U.S. 41, 47 (1957),
overruled on other grounds, Twombly, 550 U.S. at 563); see also

<u>Anderson v. Sara Lee Corp.</u>, 508 F.3d 181, 188 (4th Cir. 2007). In order to survive a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" <u>Ashcroft v. Iqbal</u>, 129 S. Ct. 1937, 1949 (2009) (quoting <u>Twombly</u>, 550 U.S. at 570); <u>see also</u> <u>Monroe v. City of Charlottesville</u>, 579 F.3d 380, 386 (4th Cir. 2009).

Application of the Rule 12(b)(6) standard requires that the court "'accept as true all of the factual allegations contained in the complaint . . . .'" <u>Erickson</u>, 127 S. Ct. at 2200 (quoting <u>Twombly</u>, 127 S. Ct. at 1965); <u>see also</u> <u>South Carolina Dept. Of Health And Environmental Control v. Commerce and Industry Ins. Co.</u>, 372 F.3d 245, 255 (4th Cir. 2004) (quoting <u>Franks v. Ross</u>, 313 F.3d 184, 192 (4th Cir. 2002)). The court must also "draw[] all reasonable . . . inferences from th[e] facts in the plaintiff's favor . . . ." <u>Edwards v. City of Goldsboro</u>, 178 F.3d 231, 244 (4th Cir. 1999).

## III. Discussion

### A. West Virginia Wage Payment and Collection Act

The parties dispute whether the severance pay offered to Ms. Blackwood is covered under the WPCA.

The WPCA states that "[w]henever a person, firm or corporation discharges an employee . . . the person, firm or corporation shall pay the employee's wages due for work that the employee performed prior to the separation of employment on or before the next regular payday on which the wages would otherwise be due and payable." W. Va. Code § 21-5-4(b).

The term "Wages" is defined by the WPCA as

> compensation for labor or services rendered by an employee, whether the amount is determined on a time, task, piece, commission or other basis of calculation. As used in sections four, five, eight-a, ten and twelve of this article, the term "wages" shall also include then accrued fringe benefits capable of calculation and payable directly to an employee: Provided, That nothing herein contained shall require fringe benefits to be calculated contrary to any agreement between an employer and his or her employees which does not contradict the provisions of this article.

Id. at § 21-5-1(c). Further, the term "fringe benefits," which constitutes wages according to the WPCA, is defined as

> any benefit provided an employee or group of employees by an employer, or which is required by law, and includes regular vacation, graduated vacation, floating vacation, holidays, sick leave, personal leave, production incentive bonuses, sickness and accident benefits and benefits relating to medical and pension coverage.

Id. at § 21-5-1(l).

Inasmuch as the Supreme Court of Appeals of West Virginia has never explicitly contemplated whether severance pay constitutes "wages" or "fringe benefits" under the WPCA, the

defendants cite several cases that they believe prove instructive.

In <u>Southern v. Emery Worldwide</u>, 788 F. Supp. 894 (S.D.W. Va. 1992), this court noted that "[s]everance benefits are unaccrued, unvested benefits provided to employees upon their separation from employment," <u>id.</u> at 897. There, the plaintiff brought state law claims under the WPCA which the court declined to address because such claims were preempted by the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1001 <u>et seq.</u> While the court did not ultimately decide whether severance pay constituted a "wage" under the "WPCA," the description of "severance benefits" provided above is useful.[2]

The Supreme Court of Appeals of West Virginia has similarly noted, when a petitioner made a claim for recovery of a severance payment under the WPCA, that it believed severance pay "would constitute a specific promise by the City to him, not a fringe benefit." <u>Howell v. City of Princeton</u>, 210 W. Va. 735, 738 n.3, 559 S.E.2d 424, 427 n.3 (2001). The supreme court in that matter did not specifically address petitioner's claim to

---

[2] Plaintiff argues such a definition is inapplicable to the matter here because <u>Southern</u> is an ERISA case. Pl.'s Resp., ECF No. 8-1, at 10-11.

severance pay because it reversed the decision of the circuit court on other grounds. Id. at 738 n.2, 559 S.E.2d at 427 n.2.[3]

Finally, the West Virginia Supreme Court has also stated:

> the WPCA protects as "wages" only those fringe benefits which have both accumulated and vested. In order to ensure that the amount of accumulated benefits may be determined, only those benefits which are "capable of calculation" under the terms of the applicable employment policy are protected. Also, the fringe benefits must have vested according to the eligibility requirements of the terms of employment.

Meadows v. Wal-Mart Stores, Inc., 207 W. Va. 203, 217, 530 S.E.2d 676, 690 (1999). "Further, the terms of employment may condition the vesting of a fringe benefit right on some eligibility requirement in addition to the performance of services." Id. "However, the terms of employment must be express and specific so that employees understand the amount, if any, of the fringe benefits owed to them upon separation from employment. Accordingly, this Court will construe any ambiguity in the terms of employment in favor of employees." Id.

Additionally, in her concurring opinion in Meadows, Justice Davis wrote to emphasize the basis of her decision, noting that fringe benefits under the WPCA are "those benefits

---

[3] Once again, the plaintiff contests the defendants' use of this case because the court did not address the petitioner's WPCA claim for severance pay. Pl.'s Resp., ECF No. 8-1 at 11.

which have vested during an employee's period of employment."
Id. at 226, 530 S.E.2d at 699.  She went on to compare the WPCA
to ERISA and noted that the Court of Appeals for the Fourth
Circuit has held that, "[b]ecause, under ERISA, severance
benefits are contingent and unaccrued, an employer may
unilaterally amend or eliminate the provisions of a severance
plan[.]"  Id. at 227 n.2, 530 S.E.2d at 700 n.2 (quoting Sejman
v. Warner-Lambert Co., Inc., 889 F.2d 1346, 1348-49 (4th Cir.
1989)).

        The plaintiff asserts that the severance pay promised
by Berry Dunn was a fringe benefit that had accrued, vested and
was payable to Blackwood with her final payroll deposit.  Pl.'s
Resp., ECF No. 8-1, at 14-16.  In support of this contention,
plaintiff cites a March 16, 2017 Final Pay Memorandum, attached
to her response, which enumerated the payments she was to
receive after being terminated.  Id. at 15.  The plaintiff
suggests that the severance pay was calculated per Berry Dunn's
policy as "Earnings," inasmuch as the severance pay was listed
along with her owed wages from the previous day's work and
accrued vacation time.  Id.

        Even if the court considered this document by
converting the motion to dismiss to one for summary judgment, it
would be of no consequence.  There is no allegation that the

terms of Ms. Blackwood's employment included a promise for severance pay and no ambiguity to resolve in the employee's favor.

The only pertinent allegations on this point in the complaint state that after Ms. Blackwood was informed her employment was being terminated, Berry Dunn said it would pay three-weeks' severance. Compl., ECF No. 1-1, at ¶ 42. The severance pay was only promised after the termination of employment, and it therefore cannot have accrued or vested before her employment ended.

The offer of severance pay, as presented in the complaint, does not fall within the purview of the WPCA, and plaintiff's WPCA claim against Berry Dunn is dismissed.

B. Wrongful Termination

Defendants contend that plaintiff's wrongful termination claims against all defendants fail because the West Virginia Human Rights Act ("WVHRA"), W. Va. Code § 5-11-1 et seq., is the exclusive remedy for age discrimination claims in West Virginia, but the plaintiff does not invoke any statutory basis for her age discrimination claims. Defs.' Mem., ECF No. 5, at 5-6. The plaintiff asserts that Berry Dunn used the

pictures of her "sleeping" on the job as pretext to fire her
because of her age "in violation of well settled public public
[sic] policy in West Virginia which prohibits termination from
employment on the basis of the employee's age."  Compl., ECF No.
1-1, at ¶ 3.

        The WVHRA states that "[e]qual opportunity in the
areas of employment and public accommodations is hereby declared
to be a human right or civil right of all persons without regard
to race, religion, color, national origin, ancestry, sex, age,
blindness or disability."  W. Va. Code § 5-11-2.

        The WVHRA represents the exclusive remedy under West
Virginia law for the unlawful discrimination it proscribes,
precluding any common law cause of action for employment
discrimination.  See W. Va. Code § 5-11-13; Guevara v. K-Mart
Corp., 629 F. Supp. 1189, 1192 (S.D.W. Va. 1986) ("[A] victim of
discrimination prohibited by the West Virginia Human Rights Act
is limited to a suit under that statute and may not prosecute a
so-called Harless-type action.").[4]  "Plaintiff cannot state a

---

[4] "We conceive that the rule giving the employer the absolute
right to discharge an at will employee must be tempered by the
further principle that where the employer's motivation for the
discharge contravenes some substantial public policy principle,
then the employer may be liable to the employee for damages
occasioned by the discharge."  Harless v. First Nat'l Bank in
Fairmont, 162 W. Va. 116, 124, 246 S.E.2d 270, 275 (1978).

plausible claim for wrongful discharge in violation of public policy when the WVHRA applies to Defendant and covers the same factual conduct." <u>Adkins v. Cellco P'ship</u>, No. 3:17-cv-2772, 2017 WL 2961377, at *4 (S.D.W. Va. July 11, 2017).

Here, the plaintiff's age discrimination claim is covered by the WVHRA. It is clear from the allegations that she is suing for the violation of a public policy against age discrimination, and there is no mention of the WVHRA in the complaint. In her response to the defendants' motion to dismiss, the plaintiff does not dispute any of defendants' arguments related to the exclusive nature of the remedies set forth in the West Virginia Human Rights Act. Instead, she asserts that her wrongful termination claim is based on defendants' alleged violation of a substantial public policy in West Virginia against invasion of privacy as set forth in West Virginia Code § 21-3-20.[5] Pl.'s Resp., ECF No. 8-1, at 4-9.

---

[5] "It is unlawful for any employer or the agent or representative of an employer, whether public or private, to operate any electronic surveillance device or system, including, but not limited to, the use of a closed circuit television system, a video-recording device, or any combination of those or other electronic devices for the purpose of recording or monitoring the activities of the employees in areas designed for the health or personal comfort of the employees or for safeguarding of their possessions, such as rest rooms, shower rooms, locker rooms, dressing rooms and employee lounges." W. Va. Code § 21-3-20.

This assertion is plainly inconsistent with what is pled in the complaint. Plaintiff expressly states that her termination was based on age discrimination. Compl., ECF No. 1-1, at ¶ 3. Nowhere in the complaint does the plaintiff indicate that her wrongful termination is based on the substantial public policy against recording or monitoring employees in privacy areas of the workplace as specified in § 21-3-20.[6] She may not raise this argument for the first time in her response in opposition to the defendants' motion to dismiss. <u>See</u> <u>S. Walk at Broadlands Homeowner's Ass'n</u>, 713 F.3d at 184 ("It is well-established that parties cannot amend their complaints through briefing.").

The plaintiff has asserted a claim for wrongful termination based on age discrimination, and the exclusive remedy for such a claim is the WVHRA. Accordingly, the wrongful termination claim is dismissed.

---

[6] Plaintiff's counsel also asserts that he was not aware of West Virginia Code § 21-3-20 at the time the complaint was filed. Pl.'s Resp., ECF No. 8-1, at 5 n.16.

C. Unlawful Invasion of Privacy

Defendants move to dismiss plaintiff's unlawful invasion of privacy claims for failure to state a claim upon which relief can be granted. Defs.' Mem., ECF No. 5, at 6-8.

West Virginia recognizes four areas of invasion of privacy: "(1) an unreasonable intrusion upon the seclusion of another; (2) an appropriation of another's name or likeness; (3) unreasonable publicity given to another's private life; and (4) publicity that unreasonably places another in a false light before the public." Syl. Pt. 8, <u>Crump v. Beckley Newspapers, Inc.</u>, 173 W. Va. 699, 320 S.E.2d 70 (1983).

The plaintiff suggests in her response that her complaint supports a cause of action for invasion of privacy for unreasonable intrusion, unreasonable publication of a private fact, and unreasonable publication of information that places another in false light. Pl.'s Resp., ECF No. 8-1, at 9.

The court has already held that none of these claims could survive against Ms. Becnel in its March 13, 2019 memorandum opinion and order denying plaintiff's motion to remand. ECF No. 26, at 9-14. There, the court found that taking photographs of Ms. Blackwood while she was eating lunch at work could not constitute an unreasonable intrusion into the

solitude or seclusion of another.  See id. at 10; Restatement

(Second) of Torts § 652B (1977).  The court also concluded that

any claim for publication of private fact or publication that

places another in false light arising from the facts in the

complaint must also fail because there has been no allegation

that any such information was publicized to more than a small

group of people.  See ECF No. 26, at 11-14; Mays v. Marshall

Univ. Bd. of Governors, 2015 WL 6181508, at *6 (W. Va. Oct. 20,

2015).

        Inasmuch as there are no facts pled against any of the

defendants to indicate that there was an unreasonable intrusion

into Ms. Blackwood's seclusion or that any information was

publicized to more than a small group of people, the plaintiff

has failed to state a claim for unlawful invasion of privacy.

The court incorporates the analysis in its March 13, 2019 order

as it relates to unlawful invasion of privacy as though it were

set forth herein, and plaintiff's claim for invasion of privacy

against Berry Dunn and Ms. Becnel is dismissed.

    D.  Breach of Promise and Detrimental Reliance

        Defendants move to dismiss the plaintiff's claim for

breach of promise on the grounds that Ms. Blackwood never

accepted defendants' offer of severance pay and that there was

no consideration given by her in exchange for the promise of
severance pay. Defs.' Mem., ECF No. 5, at 8-11. They also move
to dismiss the detrimental reliance aspect of the claim on the
grounds that it is not a cause of action recognized under West
Virginia law. As a preliminary matter, there is no allegation
that a defendant other than Berry Dunn made any promise to Ms.
Blackwood. Accordingly, these claims are dismissed against Ms.
Becnel.

The West Virginia Supreme Court "has recognized that
under certain circumstances, employers may be bound by promises
that they make to their employees." Tiernan v. Charleston Area
Med. Ctr., Inc., 212 W. Va. 859, 865, 575 S.E.2d 618, 624 (2002)
(citing Cook v. Heck's, 176 W. Va. 368, 342 S.E.2d 453 (1986)
(promises made in employee handbook may be legally binding)).
Further, the court has held:

> Where an employee seeks to establish a permanent
> employment contract or other substantial employment
> right, either through express promises by the employer
> or by implication from the employer's personnel
> manual, policies, or custom and practice, such claim
> must be established by clear and convincing evidence.

Adkins v. Inco Alloys Int'l, Inc., 187 W. Va. 219, 225, 417
S.E.2d 910, 916 (1992).

The plaintiff claims she relied to her detriment on
Berry Dunn's promise to give her severance pay by "making
purchases and committing to making other payments in the

approximate amount of the severance payment." <u>See</u> Compl., ECF No. 1-1, at ¶ 45.  The Supreme Court of West Virginia has held, as set forth in Syllabus Point 3 of <u>Everett v. Brown</u>, 174 W. Va. 35, 321 S.E.2d 685 (1984), as follows:

> A promise which the promisor should reasonably expect to induce action or forbearance on the part of the promisee or a third person and which does induce the action or forbearance is enforceable notwithstanding the Statute of Frauds if injustice can be avoided only by enforcement of the promise. The remedy granted for breach is to be limited as justice requires.

The court then set forth various factors to be considered in determining whether injustice can be avoided only by enforcement of the promise.[7]

Here, the allegations in the complaint state that Berry Dunn's human resources representative informed Ms. Blackwood that she was going to receive three weeks severance pay in the amount of $4,038.46 and that this payment was

---

[7] The Supreme Court of West Virginia has also noted that:

> Equitable estoppel cannot arise merely because of action taken by one on a misleading statement made by another. In addition thereto, it must appear that the one who made the statement intended or reasonably should have expected that the statement would be acted upon by the one claiming the benefit of estoppel, and that he, without fault himself, did act upon it to his prejudice.

Syl. Pt. 4, <u>Barnett v. Wolfolk</u>, 149 W. Va. 246, 140 S.E.2d 466 (1965).

unconditional.  Compl., ECF No. 1-1, at ¶ 44.  Whether a recently terminated employee would be justified in relying upon such a promise requires factual development.  Defendants' motion to dismiss the breach of promise and detrimental reliance claim against Berry Dunn is denied.

### E. Breach of Contract and Covenant of Good Faith and Fair Dealing

The defendants argue that these claims should be dismissed inasmuch as the plaintiff has not pled the elements necessary to maintain a breach of contract claim, and accordingly, has failed to plead the accompanying claim of breach of the covenant of good faith and fair dealing.  Defs.' Mem., ECF No. 5, at 12-14.  As with the breach of promise claim, there is no allegation that any defendant other than Berry Dunn made any attempt to enter into a contract with Ms. Blackwood.  Therefore, these claims are dismissed as against Ms. Becnel.

"A claim for breach of contract requires proof of the formation of a contract, a breach of the terms of that contract, and resulting damages."  **Sneberger v. Morrison**, 235 W. Va. 654, 669, 776 S.E.2d 156, 171 (2015).  To state a claim for breach of contract, the plaintiff "must allege facts sufficient to support the following elements: the existence of a valid, enforceable

contract; that the plaintiff has performed under the contract; that the defendant has breached or violated its duties or obligations under the contract; and that the plaintiff has been injured as a result." **Exec. Risk Indem., Inc. v. Charleston Area Med. Ctr., Inc.**, 681 F. Supp. 2d 694, 714 (S.D.W. Va. 2009) (citing 23 Williston on Contracts § 63:1 (Richard A. Lord, ed. 4th ed. West 2009)).  A contractual relationship consists "of an offer and an acceptance, supported by sufficient consideration." Syl. Pt. 1, **First Nat'l Bank of Gallipolis v. Marietta Mfg. Co.**, 151 W. Va. 636, 153 S.E.2d 172 (1967).  Moreover, "the West Virginia Supreme Court of Appeals has 'declined to recognize an independent claim for a breach of the common law duty of good faith,' and has instead held that such a claim sounds in breach of contract." **Powell v. Bank of Am., N.A.**, 842 F. Supp. 2d 966, 981 (S.D.W. Va. 2012) (citing **Doyle v. Fleetwood Homes of Va.**, 650 F.Supp.2d 535, 541 (S.D.W. Va. 2009)).

Here the defendants argue that the facts pled in the complaint do not establish that a contract existed between the parties that would require Berry Dunn to provide Ms. Blackwood severance pay.  Defs.' Mem., ECF No. 5, at 12.  Specifically, the defendants note that Ms. Blackwood never accepted the offer of severance pay, that there was no mutual assent regarding

severance pay and that Ms. Blackwood provided no consideration for the severance pay.  Id. at 12-13.

Ms. Blackwood cites First Nat'l Bank of Gallipolis in support of the contention that there was a contract between the parties.  Pl.'s Resp., ECF No. 8-1, at 17-18.  There, the court held:

> Where one makes an unequivocal statement in writing that he will pay another a certain sum of money and the latter, in reliance upon such statement, performs to his detriment, as expected from the circumstances surrounding the parties, a contractual relationship is consummated, consisting of an offer and an acceptance, supported by sufficient consideration.

Syl. Pt. 1, First Nat'l Bank of Gallipolis, 151 W. Va. 636, 153 S.E.2d 172.  The court there also referenced the Restatement (Second) of Contracts § 72(2), which states: "Where the offeree exercises dominion over things which are offered to him, such exercise of dominion in the absence of other circumstances showing a contrary intention is an acceptance."  Id. at 642, 153 S.E.2d at 176-77.

The defendants are correct in that there are no facts alleged in the complaint to suggest that Ms. Blackwood ever indicated to any member of Berry Dunn that she accepted the offer of severance pay.[8]  Further, no severance pay was ever

---

[8] The court notes that the plaintiff filed, attached to her response, the electronic letter sent from Debra Genender to Ms. Blackwood informing her that she was going to receive three

actually paid to Ms. Blackwood; rather, Ms. Blackwood merely asserts that she relied on the promised payment to make other purchases and payments. Accordingly, Ms. Blackwood could not have exercised dominion over the severance pay to demonstrate to Berry Dunn that she had accepted the offer.[9] Because Ms. Blackwood never accepted the offer of severance pay by Berry Dunn, no contract was formed, and the breach of contract claim and accompanying claim for breach of the covenant of good faith and fair dealing against Berry Dunn are dismissed.

---

weeks' severance, as well as a Final Pay Memorandum. See Pl.'s Mot. Leave File Remand Instanter, ECF No. 8, Exs. 2, 3. However, neither of these documents suggest that Ms. Blackwood accepted an offer.

[9] In her response, the plaintiff makes numerous factual contentions that are not contained in the complaint. Namely that Ms. Blackwood informed Berry Dunn, after she used her own money to make purchases that "she would not have made but for Berry Dunn's unconditional promise of severance pay," if "the severance pay was not deposited into her account, she would not be able to meet her family's financial obligations." Pl.'s Resp., ECF No. 8-1, at 17. It is not apparent that such a contention would constitute an acceptance, but inasmuch as these facts were not alleged in the complaint, they may not be asserted for the first time in the briefings. See S. Walk at Broadlands Homeowner's Ass'n, 713 F.3d at 184.

F. IIED

The defendants move to dismiss plaintiff's IIED claims on the grounds that she has failed to state a claim upon which relief can be granted. Defs.' Mem., ECF No. 5, at 14-17.[10]

The Supreme Court of West Virginia has set forth the elements necessary to plead IIED:

> (1) That defendant's conduct was atrocious, intolerable, and so extreme and outrageous as to exceed the bounds of decency; (2) That the defendant acted with the intent to inflict emotional distress, or acted recklessly when it was certain or substantially certain emotional distress would result from his conduct; (3) That the actions of the defendant caused the plaintiff to suffer emotional distress; and (4) That the emotional distress suffered by the plaintiff was so severe that no reasonable person could be expected to endure it.

Philyaw v. E. Associated Coal Corp., 219 W. Va. 252, 257, 633 S.E.2d 8, 13 (2006) (quoting Syllabus Point 3, Travis v. Alcon Labs., 202 W. Va. 369, 504 S.E.2d 419 (1998)). Courts are to play a "gate-keeping" role in determining whether, as a matter of law, asserted conduct could reasonably satisfy the element of "atrocious, intolerable, and so extreme and outrageous as to exceed the bounds of decency." Id. Conduct which is merely

---

[10] The court notes that the plaintiff does not respond to defendants' arguments in support of dismissal of the IIED claim.

"unreasonable, unkind or unfair" is insufficient to state a claim for IIED. Id. at 258.

In her complaint, the plaintiff states that "[i]n placing conditions on their unconditional promise of payment, Berry Dunn and Ms. Becnel intentionally and or negligently caused Ms. Blackwood substantial emotional distress accompanied by physical injury." Compl., ECF No. 1-1, at ¶ 49. This is the only allegation of emotional distress alleged in the complaint.

Even taking the allegations in the complaint in the light most favorable to Ms. Blackwood, it cannot be said that placing conditions on severance pay, after promising it unconditionally, rises to the level of outrageousness necessary to maintain a claim for IIED. For these reasons, the IIED claims against Berry Dunn and Ms. Becnel are dismissed.[11]

_____

[11] The court notes that in the plaintiff's response, she alleges that she suffered emotional distress based on the alleged invasion of privacy that resulted from employees of Berry Dunn taking photographs of her with her eyes closed while on a lunch break. Pl.'s Resp., ECF No. 8-1, at 9-10. However, as has been stated repeatedly, a party may not amend their pleadings through briefings. S. Walk at Broadlands Homeowner's Ass'n, 713 F.3d at 184. Further, for the reasons set forth above, an IIED claim arising out of pictures being taken of a person in plaintiff's position would not rise to the necessary level of outrage for such a claim to survive.

25

G. Negligent Infliction of Emotional Distress

The defendants contend that plaintiff's negligent infliction of emotional distress claim fails as a matter of law. Defs.' Mem., ECF No. 5, at 17-19.[12]  Again, the only allegation pertaining to this claim is: "In placing conditions on their unconditional promise of payment, Berry Dunn and Ms. Becnel intentionally and or negligently caused Ms. Blackwood substantial emotional distress accompanied by physical injury." Compl., ECF No. 1-1, at ¶ 49.

The Supreme Court of West Virginia has only recognized a few scenarios in which a plaintiff my plead a claim for negligent infliction of emotional distress.  "Negligent infliction of emotional distress usually requires that the plaintiff witness a physical injury to a closely related person, suffer mental anguish that manifests itself as a physical injury and the plaintiff must be within the zone of danger so as to be subject to an unreasonable risk of bodily harm created by the defendant."  Belcher v. Goins, 184 W. Va. 395, 408, 400 S.E.2d 830, 843 (1990) (citing Harless v. First Nat'l Bank, 169 W. Va. 673, 689, 289 S.E.2d 692, 702 (1982)).  A plaintiff generally

---

[12] The plaintiff does not respond to defendants' arguments in support of the dismissal of the negligent infliction of emotional distress claim.

must demonstrate "that his or her serious emotional distress was reasonably foreseeable, that the defendant's negligent conduct caused the victim to suffer critical injury or death, and that the plaintiff suffered serious emotional distress as a direct result of witnessing the victim's critical injury or death." Heldreth v. Marrs, 188 W. Va. 481, 493, 425 S.E.2d 157, 169 (1992). The West Virginia Supreme Court has also noted that "[a]lthough physical injury is no longer a necessary element of a negligent infliction of emotional distress claim, such a cause of action generally must be premised on conduct that unreasonably endangers the plaintiffs physical safety or causes the plaintiff to fear for his or her physical safety." Brown v. City of Fairmont, 221 W. Va. 541, 547, 655 S.E.2d 563, 569 (2007).

Plaintiff's situation does not apply to any of those above, and her negligent infliction of emotional distress claim against Berry Dunn and Ms. Becnel is, accordingly, dismissed.

H. Aiding and Abetting

The defendants move to dismiss plaintiff's aiding and abetting claim for failure to plead sufficient facts to establish an aiding and abetting cause of action. Alternatively, defendants contend that no causes of action

survive against the defendants, and thus that there is no tort for any defendant to have aided or abetted. Defs.' Mem., ECF No. 5, at 19-20.

In Syllabus Point 5 of <u>Courtney v. Courtney</u>, 186 W. Va. 597, 413 S.E.2d 418 (1991), the West Virginia Supreme Court stated: "For harm resulting to a third person from the tortious conduct of another, one is subject to liability if he knows that the other's conduct constitutes a breach of duty and gives substantial assistance or encouragement to the other so to conduct himself." <u>Id.</u> (citing <u>Price v. Halstead</u>, 177 W. Va. 592, 597, 355 S.E.2d 380, 386 (1987) (adopting the Restatement (Second) of Torts, § 876(b) (1979))). Further, "the ability to recover for aiding and abetting necessarily depends upon the ability of a plaintiff to prove the underlying tort." <u>Roney v. Gencorp</u>, 431 F. Supp. 2d 622, 638 (S.D.W. Va. 2006).

Here, the plaintiff only contends in her complaint that Ms. Becnel directed other employees of Berry Dunn to "secretly take photos of Ms. Blackwood sleeping at work." Compl., ECF No. 1-1, at ¶ 35. The plaintiff suggests in her response that "Becnel was the driving force behind Blackwood's wrongful termination and invasion of privacy." Pl.'s Resp., ECF No 8-1, at 18. Inasmuch as Ms. Becnel is the individual who fired Ms. Blackwood for sleeping on the job, Compl., ECF No. 1-

1, at ¶ 31, and reading the complaint in the light most favorable to the plaintiff, it is plausible that Ms. Becnel could have aided and abetted the Jane Doe defendants or Berry Dunn in their commission of the torts of invasion of privacy and wrongful termination.

However, even if that were the case, as set forth above, plaintiff has not pled a viable claim for invasion of privacy or wrongful termination against Berry Dunn or Ms. Becnel – the only torts it appears plaintiff asserts that any defendant aided or abetted.  Accordingly, the claim for aiding and abetting against Berry Dunn and Ms. Becnel is dismissed.

## IV.   Conclusion

For the foregoing reasons, it is ORDERED that defendants' motion to dismiss be, and it hereby is, granted except for plaintiff's claim for breach of promise and detrimental reliance against Berry Dunn.  Inasmuch as the Jane Doe(s) defendants have never been identified, it is further ORDERED that the complaint be, and it hereby is, dismissed as to them.

The Clerk is directed to transmit copies of this memorandum opinion and order to all counsel of record and any unrepresented parties.

ENTER: May 29, 2019

John T. Copenhaver, Jr.
Senior United States District Judge