UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF WEST VIRGINIA
AT CHARLESTON

JULIA E. BLACKWOOD,

    Plaintiff,

v.                          Civil Action No. 2:18-cv-1216

BERRY DUNN, LLC,

    Defendant.

## MEMORANDUM OPINION AND ORDER

Pending is defendant Berry Dunn, LLC's ("Berry Dunn") motion for summary judgment, filed June 11, 2019.

### I. Background

The only surviving cause of action in this matter is plaintiff Julia Blackwood's claim against Berry Dunn for breach of promise and detrimental reliance.

On March 16, 2017, Ms. Blackwood was fired from her job as a consultant with Berry Dunn during a meeting with certain Berry Dunn supervisors. Compl., ECF No. 1-1, ¶ 31. Ms. Blackwood asserts that during that same meeting, Berry Dunn's director of human resources, Debra Genender, "informed Blackwood she would be paid three weeks' severance pay." Blackwood Aff., ECF No. 40-1, ¶ 32. Ms. Blackwood further states that when she

was informed that she was being terminated, Ms. Genender told her that Berry Dunn would not leave her "empty handed." Id. ¶ 48.

On Friday, March 17, 2017, a day after Ms. Blackwood was informed that her employment was being terminated, Ms. Genender informed Ms. Blackwood by electronic mail that she was "being given 3 week's severance, so you will see 8 hours for yesterday, your accrued vacation time (55 hours) and 3 weeks of severance that will all be paid in the final check." Id. ¶ 43; Compl., ECF No. 1-1, ¶ 42. Attached to that same email was Ms. Blackwood's final pay memorandum which included the "3 weeks of severance" amounting to $4,038.46. Blackwood Aff., ECF No. 40-1, ¶¶ 43-44.

Later that same day, Ms. Genender sent Ms. Blackwood another email stating that "[p]er West Virginia labor laws, we have to pay you within 4 business days. Therefore, you will see a direct deposit of all pay owed to you (from my previous email), no later than Wednesday," which would have been March 22, 2017. Id. ¶ 45. Ms. Blackwood claims that this email confirmed "Berry Dunn's payment of severance pay pursuant to the terms of its severance pay policy." Id. On Tuesday, March 21, 2017, Ms. Genender sent Ms. Blackwood another email stating: "My previous email indicated that we would be providing you with

severance payment.  We are in the process of drafting a separation agreement with a waiver of claims that you will need to sign in order to be eligible for any severance payment." Id. ¶ 47.

On Wednesday, March 22, 2017, Ms. Blackwood sent an email to Ms. Genender stating the following:

> After receiving your promise of my final payment being directly deposited into my bank account today, I used funds I had available for purchases that could and would have been delayed if I had not relied on your promised payment.
>
> Not only was your promise of payment unequivocal, the form of payment promised (direct deposit to my bank account) assured me my bank would allow me full availability and use of these funds immediately on receipt!
>
> As such, I need the payment of all funds outlined in the attachment to your initial email on March 17, 2017 direct deposited into my account today as promised. Otherwise, I will not have the funds to meet . . . my family's needs.

ECF No. 19-3, at 7.  She states in her affidavit that she "had made purchases and other financial commitments to [her] family that [she] would not have promised (band camp; medical needs of daughter; miscellaneous expenses for son entering college; advance mortgage payment) all of which [she] would not be able to cover without the severance pay promised." Id. ¶ 48.

On March 27, 2017, Ms. Blackwood received the severance agreement, which she ultimately refused to sign

3

inasmuch as she asserts that a provision of the agreement would have prevented her "from working in [her] field in the State of West Virginia" and was therefore unconscionable. Id. ¶¶ 49-51. Ms. Blackwood never received any severance pay. She asserts that she expected to "be paid severance based on [her] experience in having worked for other consulting firms" and that "these firms have always paid severance to terminated professional employees . . . . [as] it is the norm for this type of employment." Id. ¶ 42.

The court notes that inasmuch as the parties have not exchanged discovery in this matter, the plaintiff submitted, with her response in opposition to defendant's motion for summary judgment, an affidavit containing the text of several of the emails noted above. These same emails have been attached to previous briefings by the plaintiff and/or described in the complaint, and the defendant has not contested their veracity or validity. See ECF Nos. 8-2, 19-1, 19-2, 19-3.

In Berry Dunn's reply, it argues that plaintiff's response was untimely, which it was, and asks that the court not consider Ms. Blackwood's response and dismiss the remaining claim. Def.'s Reply, ECF No. 41, at 1-2. On July 9, 2019, the court granted plaintiff's July 5, 2019 motion for a five-day extension to file her response to defendant's motion for summary

4

judgment and set a deadline of July 10, 2019. The plaintiff filed her response before the start of business on July 11, 2019, and inasmuch as no prejudice is shown to have been caused by plaintiff's tardiness, and in the interest of justice, the court will consider the response as well as the attached affidavit in deciding defendant's motion for summary judgment.

## II. Standard of Review

A party is entitled to summary judgment "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). Material facts are those necessary to establish the elements of a party's cause of action. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

A genuine issue of material fact exists if, in viewing the record and all reasonable inferences drawn therefrom in a light most favorable to the non-moving party, a reasonable fact-finder could return a verdict for the non-movant. Id. The moving party has the burden of showing -- "that is, pointing out to the district court -- that there is an absence of evidence to support the nonmoving party's case." Celotex Corp. v. Catrett,

477 U.S. 317, 325 (1986). If the movant satisfies this burden, then the non-movant must set forth specific facts as would be admissible in evidence that demonstrate the existence of a genuine issue of fact for trial. Fed. R. Civ. P. 56(c); id. at 322-23.

Conversely, summary judgment is inappropriate if the evidence is sufficient for a reasonable fact-finder to return a verdict in favor of the non-moving party. Anderson, 477 U.S. at 248. Even if there is no dispute as to the evidentiary facts, summary judgment is also not appropriate where the ultimate factual conclusions to be drawn are in dispute. Overstreet v. Ky. Cent. Life Ins. Co., 950 F.2d 931, 937 (4th Cir. 1991).

### III. Discussion

Defendant contends that plaintiff's breach of promise and detrimental reliance claim fails as a matter of law. First, defendant equates plaintiff's breach of promise claim to one for breach of contract and asserts that plaintiff cannot prove certain of the essential contract elements: offer, acceptance, meeting of the minds and consideration. See Def.'s Mem., ECF No. 34, at 4-10 (citing Studeny v. Cabell Huntington Hosp., No. 13-0363, 2013 WL 6152402, at *2 (W. Va. Nov. 22, 2013) (discussing a breach of contract claim related to an alleged

promise for severance pay)).[1]  Next, Berry Dunn states that the detrimental reliance portion fails inasmuch as it is not a stand-alone claim.  Id. at 10.

The court indicated in its May 29, 2019 order on defendants' motion to dismiss that it considered the remaining claim for breach of promise and detrimental reliance to be linked to a claim for equitable estoppel.  See ECF No. 31, at 17-20.  In her response to defendant's motion for summary judgment, Ms. Blackwood appears to concede that this remaining claim was intended to be a claim for "promissory estoppel." Pl.'s Resp., ECF No. 40, at 7-8.  Accordingly, the court need only consider defendant's motion for summary judgment to the extent that it argues there is no genuine issue of material fact as to plaintiff's claim for breach of promise and detrimental reliance, which the court treats as a single claim based on equitable estoppel.

The court notes that in setting forth the elements of promissory estoppel, plaintiff cites cases from the Court of Appeals for the Second Circuit and the United States District Court for the Southern District of New York.  Id.  Inasmuch as

---

[1] The court dismissed plaintiff's breach of contract claim on the grounds that Ms. Blackwood failed to assert that she accepted the offer of severance pay.  See ECF No. 31, at 23.

courts sitting in diversity, as the court does here, are "to apply the substantive law the State in which they are sitting would apply if the case had originated in a State court," the court applies West Virginia law to the remaining claim. **Stonehocker v. Gen. Motors Corp.**, 587 F.2d 151, 154 (4th Cir. 1978).

The Supreme Court of Appeals of West Virginia has stated:

> Equitable estoppel cannot arise merely because of action taken by one on a misleading statement made by another. In addition thereto, it must appear that the one who made the statement intended or reasonably should have expected that the statement would be acted upon by the one claiming the benefit of estoppel, and that he, without fault himself, did act upon it to his prejudice.

Syl. Pt. 4, **Barnett v. Wolfolk**, 149 W. Va. 246, 140 S.E.2d 466 (1965). The West Virginia Supreme Court has also set forth various factors to be considered in determining whether injustice can be avoided only by enforcement of a promise, the following three of which are of interest here: (1) the extent to which the reliance was foreseeable by the promisor; (2) whether the reliance was reasonable; and (3) whether the extent of reliance is consistent with the terms of the promise or whether the making or terms of the promise are established by clear and convincing evidence. See Syl. Pt. 3, **Everett v. Brown**, 174 W. Va. 35, 321 S.E.2d 685 (1984).

Berry Dunn contends that Ms. Blackwood must prove: "(1) by clear and convincing evidence, that the employer made an express promise and should have expected that such promise would be relied and/or acted upon by the employee and (2) by a preponderance of the evidence that the employee, through no fault of her own, reasonably relied upon the promise." Def.'s Mem., ECF No. 34, at 6 (citing Hatfield v. Health Mgmt. Assocs. of W. Va., 223 W. Va. 259, 266, 672 S.E.2d 395, 402 (2008); Tiernan v. Charleston Area Med. Ctr., Inc., 212 W. Va. 859, 866 575 S.E.2d 618, 625 (2002) (per curiam)). The courts in both Hatfield and Tiernan cite to Syllabus Point 3 of Adkins v. Inco Alloys Int'l, Inc., which states:

> Where an employee seeks to establish a permanent employment contract or other substantial employment right, either through an express promise by the employer or by implication from the employer's personnel manual, policies, or custom and practice, such claim must be established by clear and convincing evidence.

187 W. Va. 219, 417 S.E.2d 910 (1992).

The court cited to that Adkins standard in its May 29, 2019 order denying defendants' motion to dismiss the claim for breach of promise and detrimental reliance inasmuch as it believed that facts uncovered in discovery might necessitate its application. See ECF No. 31, at 17-20. However, the facts before the court are distinguishable from those applying the

standards for enforcing promises by employers to employees set forth first above.

In Hatfield, the plaintiff alleged that "she relied upon the hospital's [employer] . . . offer of employment" and that a promise of permanent employment was breached when she was fired after four days on the job. See 223 W. Va. at 265-66, 672 S.E.2d at 401-02. In Tiernan, the plaintiff "asserts that her discharge was in breach of a specific promise made by her employer" that employees would not be retaliated against if they chose to speak to newspaper reporters regarding a certain hospital initiative. 212 W. Va. at 865, 575 S.E.2d at 624.

Here, the promise made to Ms. Blackwood did not concern her actual employment with Berry Dunn. Rather, the facts presented in Ms. Blackwood's affidavit and the allegations in the complaint indicate that Berry Dunn promised Ms. Blackwood severance pay after she was informed her employment was terminated.[2] Inasmuch as it appears that Berry Dunn, unprompted, promised to provide Ms. Blackwood, a then-former employee, severance pay, Ms. Blackwood cannot and need not establish a

---

[2] The court notes that Ms. Blackwood makes reference, without any accompanying detail, to a "severance pay policy" of Berry Dunn's, but there is no indication, other than her belief that consulting firms normally provide severance payments, that she had any expectation of receiving severance pay from Berry Dunn before they fired her on March 16, 2017.

"substantial employment right" to that payment.  Accordingly, the court limits the standards for equitable estoppel to those set forth in Barnett and those factors set forth in Everett and noted above.

Berry Dunn contends that it did not unconditionally offer the severance pay, and because it always expected to – and on March 21, 2017 did – ask Ms. Blackwood to sign a severance agreement in exchange for the pay, that it could not reasonably have expected Ms. Blackwood to rely upon the offer.  Defs.' Mem., ECF No. 34, at 7.  Defendant further claims that "[b]ecause Blackwood had already been terminated, common sense would easily suggest that Berry Dunn expected something in exchange for the severance pay."  Id.

Next, defendant claims that Ms. Blackwood cannot show that through no fault of her own, she reasonably relied upon the offer of severance pay.  Id.  Berry Dunn again notes that it was not reasonable for Ms. Blackwood to expect to receive severance pay without executing a severance agreement, which Berry Dunn ultimately asked her to sign, especially inasmuch as the offer did not expressly state that the severance pay was unconditional.  Id.; Def.'s Reply, ECF No. 41, at 4-5.  Berry Dunn also states that it "was unreasonable for Blackwood to rely

on the severance pay if she did not plan to execute the severance agreement." Def.'s Mem., ECF No. 34, at 7.

Finally, Berry Dunn notes that it would not be a substantial injustice to deny Blackwood relief for this claim inasmuch as they offered severance pay to an employee who was terminated "with cause." Def.'s Reply, ECF No. 41, at 5. Defendant further states that to assume such an offer was unconditional would defy common sense. Id.

The court cannot say as a matter of law that Berry Dunn did not promise Ms. Blackwood severance pay, that Berry Dunn could not have reasonably expected Ms. Blackwood to rely on its promise of severance pay or that Ms. Blackwood was unreasonable in relying on the promise. The first email sent from Ms. Genender to Ms. Blackwood on Friday, March 17, 2017, stated that plaintiff was "being given 3 week's severance" which would be included in her final check and the attachment thereto showed that amount to be $4,038.46. Blackwood Aff., ECF No. 40-1, ¶¶ 43-44. In an email sent from Ms. Genender to Ms. Blackwood later that same day, she stated that "you will see a direct deposit of all pay owed to you (from my previous email), no later than Wednesday [March 22, 2017]." Id. ¶ 45 (emphasis supplied). There is no statement that the "pay" to be deposited would not include the severance pay. In fact, the first email

states that the "3 weeks of severance . . . will all be paid in the final check." Id. ¶ 43. Further, there is no dispute about whether these emails were sent or received or about the accuracy of the content.

While Berry Dunn may have always intended to ask Ms. Blackwood to sign a severance agreement before providing her severance pay, a reasonable factfinder could conclude that, based on the actual content of the emails sent by Berry Dunn to Ms. Blackwood, they should have reasonably expected Ms. Blackwood to consider the statement regarding severance pay to be a promise and to subsequently rely on the promised payment of $4,038.46. Similarly, while one might expect severance pay to accompany a severance agreement, there is no indication that Ms. Blackwood was aware that she would have to sign a severance agreement in order to receive that money at the time, she asserts, she relied to her detriment upon the promise. The reasonableness of this belief is strained somewhat by the fact that plaintiff had recently been fired by Berry Dunn for cause, but the court cannot say that her reliance was unreasonable as a matter of law.

Finally, the text of the emails could lead a reasonable factfinder to conclude that the terms of Berry Dunn's promised severance payment to Ms. Blackwood, a direct deposit of

$4,038.46 into her bank account within four days with no stated condition upon such payment, are established by clear and convincing evidence.

Accordingly, the court finds there to be genuine issues of material fact on plaintiff's equitable estoppel claim. Further, inasmuch as these genuine issues of material fact remain, the court declines to conclude, as defendant requests, that it would not be a substantial injustice to deny Ms. Blackwood relief on this claim.

The court also acknowledges defendant's assertion that inasmuch as plaintiff has submitted no evidence in discovery, she can point to no evidence to prove her case. Def.'s Mem., ECF No. 34, at 3-4; Def.'s Reply, ECF No. 41, at 2-3. The only "evidence" submitted is an affidavit by plaintiff which Berry Dunn claims is "self-serving" and "full of unsubstantiated assertions, conclusory allegations, and colorable factual bases." Id. at 4. However, Berry Dunn, as the movant for this motion for summary judgment, was obligated to demonstrate that there is no genuine issue of material fact as to plaintiff's claim for breach of promise and detrimental reliance, and the affidavit submitted by plaintiff presents genuine issues. Further, the portions of the affidavit relied upon herein, namely, the content of the emails exchanged between Ms. Genender

14

and Ms. Blackwood, are of no surprise to the defendant inasmuch as they have been on the record since at least December 26, 2018. ECF Nos. 8-2, 19-1, 19-2, 19-3.

IV. Conclusion

For all the foregoing reasons, it is ORDERED that defendant's motion for summary judgment be, and hereby is, denied.

The Clerk is directed to transmit this memorandum opinion and order to all counsel of record.

ENTER: July 24, 2019

_____
John T. Copenhaver, Jr.
Senior United States District Judge